Alissa J. Sammarco - 0077563<br>
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN OHIO DISTRICT
## WESTERN DIVISION, DAYTON OFFICE

| | | |
|---|---|---|
| **CHARLSIE M. BANKS** | : | Case #: |
| | : | |
| | : | Judge: |
| Plaintiff | : | |
| | : | |
| vs. | : | **COMPLAINT** |
| | : | **WITH JURY DEMAND** |
| **STATE OF OHIO, DEPARTMENT OF REHABILITATION AND CORRECTION, AND THE DAYTON CORRECTIONAL INSITUTE,** | : | **ENDORSED HEREIN** |
| | : | |
| And | : | |
| | : | |
| **STUART HUDSON, in his official capacity as an officer of the State of Ohio,** | : | |
| | : | |
| And | : | |
| | : | |
| **SHELBIE SMITH, in her official capacity as an officer of the State of Ohio,** | : | |
| | : | |
| And | : | |
| | : | |
| **JIMMY SEXTON, in his official capacity as an officer of the State of Ohio,** | : | |
| | : | |
| And | : | |
| | : | |
| **LESLIE McCALL, in her official capacity as an officer of the State of Ohio,** | : | |
| And | : | |
| | : | |
| **JOHN DOES 1 through and including 10** Names and addresses unknown | : | |
| | : | |
| Defendants | : | |

Now comes the plaintiff and states as follows:

**PRELIMINARY STATEMENT**

1.  This is a civil rights action alleging discrimination and retaliation in employment. Plaintiff alleges violations of Title VII under the Civil Rights Act of 1964, as amended, 42 USC Section 2000e, and Title 41 of the Ohio Revised Code.

2.  This is an action for past monetary relief and for prospective injunctive relief under Title VII under the Civil Rights Act of 1964, as amended, 42 USC Section 2000e, and Title 41 of the Ohio Revised Code, arising from a pattern of disability discrimination and retaliation in and affecting the State of Ohio's Department of Rehabilitation and Correction and the Dayton Correctional Institute (hereinafter referred to as "the Dayton Correctional Institute"). Plaintiff Charlsie M. Banks, was fulltime correctional officer of that department from about January 2015 to her date of termination on or about January 2016. Defendants Stuart Hudson, Interim Director of the Department of Rehabilitation and Corrections of the State of Ohio, Shelbie Smith, Warden of the Dayton Correctional Institute, Jimmy Sexton, Lieutenant at the Dayton Correctional Institute, and Leslie McCall, Personnel Director at the Dayton Correctional Institute, with the knowing approval and support of the leadership of the Department of Rehabilitation and Correction, the Dayton Correctional Institute, and the State of Ohio, subjected Plaintiff Banks to a series of punitive measures because of her sex, and in retaliation for her report of sexual harassment and participation in a protected activity, the filing of an EEOC charge. After she made formal complaints of discrimination, the Defendants subjected her to unwarranted materially adverse employment actions, deprived Plaintiff of her full-time position, and ultimately forced Plaintiff's resignation from the Dayton Correctional Institute, State of Ohio. Thereafter, they failed select

her for alternate positions, transfers, or appointments and after her resignation, refused to rehire her for a substantial period of time.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, this being an action to enforce rights guaranteed by federal statutes.

4. This is, in part, an *EX PARTE YOUNG*[1] action for injunctive and ancillary relief against individual state officers in their official capacities and therefore is outside the scope of immunity afforded to the State of Ohio by the Eleventh Amendment to the U.S. Constitution.

5. The discriminatory acts alleged below were committed within the jurisdiction of the U.S. District Court for the Southern District of Ohio, Western Division.

6. This Court has jurisdiction over the Title VII claims.

7. Defendants are domiciled in the City of Dayton, Montgomery County, Ohio.

8. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on retaliation, age &disability: Charge Nos.473-2016-00545. The EEOC issued a Notice of Right to Sue Letter was issued on August 14, 2018, and was received by Plaintiff on August 24, 2018. A true and correct copy of the Letter and Tracking printout are attached hereto and incorporated herein as Exhibit A.

## PARTIES

9. The Plaintiff is a white female. She has filed an EEOC complaint prior to filing this lawsuit. She is an employee of Defendants State of Ohio, Dayton Correctional Institute,

---

[1] *Ex Parte Young*, 209 US 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This case held that the court has jurisdiction over an individual officer in their official capacity to enjoin them from acting in their official capacity without constitutional or statutory authority and perform an illegal act, and that Eleventh Amendment will not apply such that "[t]he state has not power to impart its immunity from responsibility to the supreme authority of the United States." 209 US 123, 124.

individuals named in their official capacities and John Does 1 through and including 10, under the meaning of Title VII under the Civil Rights Act of 1964, as amended, 42 USC Section 2000e, and Title 41 of the Ohio Revised Code.

10. Defendant (Dayton Correctional Institute) is a political subdivision of the State of Ohio. Defendants Hudson, Smith, Sexton, McCall, and John Does 1 and 10 are officers of the State of Ohio and/or Dayton Correctional Institute, a political subdivision of the State of Ohio. They each have their principle places of business in the jurisdiction and venue of the U.S. District Court, Southern District of Ohio, Western Division, Cincinnati Office, and are "employers" under the meaning of Title VII under the Civil Rights Act of 1964, as amended, 42 USC Section 2000e, and Title 41 of the Ohio Revised Code.

11. Defendants had fifty (50) or more employees during the relevant period.

12. At all times relevant hereto, Defendants John Does 1 through and including 10 were and are individual or entities whose names and addresses could not have been discovered by Plaintiff through the exercise of due diligence prior to filing this lawsuit.

13. Defendants John Does 1 through and including 10 were individuals or entities who were employers or agents/employees of Defendants State of Ohio, Department of Rehabilitation and Correction and the Dayton Correctional Institute.

14. The actions of the Defendants and their agents and employees, which were within the scope of their employment, were at all relevant times undertaken because of intentional disability, age, sex, and/or race discrimination and retaliation.

**STATEMENT OF FACTS**

15. Plaintiff was hired by Defendant, State of Ohio, on or about January 2015. She worked as a Correctional Officer for the Dayton Correctional Institute for one (1) year.

16. Beginning in January 2015, by and through the actions of their agents, employees and/or managers, including but not limited to Defendants, and Correctional Officer Kyle Watson, Defendants began to harass Plaintiff on a daily basis based on her sex including unwelcome sexual advances, threats and intimidation.

17. Plaintiff was hired and trained as a Correctional Officer. She started working 2nd shift and bid to 3rd shift in or about March 2015.

18. After Plaintiff started working at the Dayton Correctional Institute, she worked under Lieutenants Sexton and Martin and under CO Kyle Watson.

19. Other officers warned Plaintiff that CO Watson was aggressive towards women, and that she might have a problem with him because she was an attractive woman.

20. CO Watson made unwelcome sexual statements to Plaintiff on a daily basis.

21. When Plaintiff was assigned to the residential units, Watson was actingas the Yard Officer. His regular duties included coming to residential unites one or two times per shift for inmate counts. However, while Plaintiff was assigned to the residential units, Watson came in much more than was ordinary or necessary.

22. When Watson came to the residential units while Plaintiff was working, he did not simply do the inmate counts, as was his duty, he would get on her computer and pull up pictures of guns and tell Plaintiff about what damage each gun would cause and what he would do to people who "messed with him". He said that if anyone messed with him, he would basically lay in the weeds in the woods and "take them out." Plaintiff understood this to be a threat.

23. CO Watson talked to Plaintiff about his sex life including stating explicitly "what he liked". He also told Plaintiff about his sex life and activities with his ex-wife. He bragged to

5

Plaintiff about his sexual prowess, including how much, how long and how many times he could have sex.

23. Plaintiff's told CO Watson to "Stop, that's not appropriate. You have issues."

25. CO Watson laughed at Plaintiff and stated, "What are you afraid of? Are you scared?"

26. This occurred almost every shift that Plaintiff and Watson worked together.

27. CO Watson physically touched Plaintiff on a regular basis. The touching included Watson pressing up against her, including pressing his crotch against her butt, brushing his arm across her breast. Plaintiff objected to his conduct and told him to, "Stop!" Watson did not stop, but instead said, "I didn't mean to."

28. In or about March 2015, Plaintiff reported CO Watson's conduct to Lieutenant Martin and Lieutenant Sexton.

29. Plaintiff reported Watson's feel-up on her, walking behind her, whistling at her. Lieutenants Martin and Sexton laughed at her, saying, "That's part of being a CO. Get used to it. It's a male-dominated field and it's going to happen." "You are an attractive woman."

30. In March of 2015, Plaintiff told Sexton, "I can't take it anymore. I'm bidding off 3rd shift." The next day, Plaintiff was given and administrative assignment and was forced to remain on 3rd shift and was blocked from bidding off 3rd shift and from bidding away from working with CO Watson.

31. Plaintiff was mostly assigned to and worked alone on Tartans 2 which is a housing unit.

32. CO Watson's behavior became worse after she reported sexual harassment against him to Martin and Sexton.

6

33. Plaintiff was so fearful of CO Watson's harassment and retaliation that she avoided being alone with him. As yard officer, Watson had a golf cart and he could be heard coming. Plaintiff would ask other officers to come over to the area where she worked when they heard him coming.

34. Defendants were aware of Watson's continued harassment, threats and retaliation and failed to take appropriate actions to stop the harassment.

35. Defendants subjected Plaintiff to additional materially adverse employment actions in retaliation for her reporting sexual harassment. These adverse actions included forcing Plaintiff to work overtime in excess of the maximum number of double shifts a CO is permitted to work under the Union Contract, to the point where she was teetering on exhaustion, getting only a few hours of sleep between multiple double shifts each week.

36. Union contract provides that COs can only be forced to work two shifts (double shifts) in a row, twice per week. Defendant was forced to work double shifts weekly at least 3 to 5 times per week.

37. On or about May 26, 2015, Plaintiff was assigned to CND Fire Watch when she was called into the Captain's office by Sexton and Martin. When she arrived, CO Watson was also present. Martin said, "Why don't you ever hang out with us?"

38. CO Watson made unwelcome sexual statements to Plaintiff in the presence of Sexton and Martin, including, "I bet you can make a man scream." "What's your favorite position?" "Let me guess. You like to be on top." "What kind of noises do you make?"

39. Plaintiff told CO Watson to "Stop it." Plaintiff asked Martin and Sexton, "Are you going to let him talk to me like that?" Martin laughed. Neither Martin nor Sexton took any actions reasonably calculated to stop the sexual harassment.

40. Martin told Plaintiff that Watson "doesn't mean any harm."

41. Lieutenants Martin and Sexton told Plaintiff that she was probably going to get fired because she "already had a mark against her" (meaning the Sexual Harassment complaint).

42. Defendants further discriminated against Plaintiff on the basis of Race, and in retaliation for her friendship with an African-American Male CO.

43. Defendants perceived Plaintiff and the African-American Male employee as an inter-racial couple. Co-workers complained to Watson, Sexton, and Martin about Plaintiff's relationship with her African-American male friend. Defendants took additional materially adverse actions against her including forcing her to work additional double shifts, and refusing her transfer off of 3rd shift, selection of her for a case manager position and giving her a low performance evaluation in an effort to keep Plaintiff from passing probation.

44. Captain Cordell, Plaintiff's supervisor told Plaintiff that, "As long as you're in a relationship with [the African-American coworker], you'll never be promoted."

45. During her probationary first year as a CO, plaintiff was given a poor work review by Lieutenant Sexton. Plaintiff appealed the performance evaluation.

46. Leslie McCall in HR told Plaintiff she didn't have the right to appeal it in an effort to keep Plaintiff from exercising her rights under the contract and in retaliation for her protected activity including complaining of Sexual Harassment, Racial Harassment and Retaliation.

47. The appeal came back in her favor and Sexton had to change the appraisal.

48. On or about September or October 2015, Defendants refused to allow Plaintiff union representation at a meeting wherein they told she could not apply to transfer to another

8

prison until she finished her first year of service and successfully completed her probationary period.

49. A comparative female employee who did not complain of Title VII violations, and who had not yet completed her first year, was permitted to apply for a transfer and to work at another prison.

50. Defendant, though the HR office at the Dayton Correctional Facility, told the other prison that Plaintiff wanted to apply to, that Plaintiff was not available to transfer.

51. Additional adverse actions which occurred regularly, and more so after Plaintiff reported Watson for sexual harassment, and after Plaintiff became friends with her African-American co-worker including being called a "a bitch in heat" who "got every man with a penis hard" by CO Watson. Martin and Sexton and other supervisors were present for these comments and took no action to stop the harassment.

52. During 2015, Plaintiff started a domestic violence class at the Dayton Correctional Institute, with the approval and permission of the Warden Jackson. This class was taught by Plaintiff through a group called Artimus and was conducted during her off hours on a volunteer basis.

53. As a form of retaliation and harassment, Lieutenant Sexton reported to Victim Services Plaintiff's class was an "inappropriate DV class."

54. At the end of her first year probationary period, Defendants extended Plaintiff's probation for three (3) months. This decision was recommended by Sexton and approved by then acting Warden Wanza Jackson.

55. By extending Plaintiff's probation, Defendants kept plaintiff from being assigned a case manager position, transferring away from the Dayton Correctional Institute, and

continuing to be subjected to sexual harassment, discrimination, racial harassment and discrimination, and retaliation.

56. The actions to which Plaintiff was subjected were frequent enough to be considered severe and pervasive. Plaintiff was constructively discharged in or about January 2016.

57. Comparative employees without protected activities, both male and female, were not given poor work performance evaluations.

58. Comparative employees African American Female employees who had friendships and/or relationships with African-American Males were treated better than Plaintiff.

59. Each of these comparative employees did not make claims of discrimination.

60. Defendants' actions adversely effected Plaintiff's working conditions by creating an environment of fear, intimidation which was so extreme that it was unbearable to Plaintiff and to the ordinary person.

61. Plaintiff began applying for other positions and to be hired by the Defendants, including the Dayton Correctional Institute, after her termination in January 2016.

62. Plaintiff is informed and believes and alleges thereon that Lieutenant Sexton took actions to keep Plaintiff from being hired in any capacity at the Dayton Correctional Institute.

63. Plaintiff was hired as an Activity Therapist and the Defendant agreed that Plaintiff and Watson would not work on the same shift or the same area. However, after Plaintiff returned to The Dayton Correctional Institute, CO Watson was permitted to work in Plaintiff's area during the Yard Days.

64. As a direct and proximate result of Defendants actions, and continued actions, plaintiff has suffered and will continue to suffer physical distress, emotional distress, lost wages,

loss of enjoyment of life, lost future earnings, compensatory damages, both economic and non-economic damages.

## FIRST CAUSE OF ACTION:  TITLE VII

65. Plaintiff re-alleges as if full y restated herein all allegations contained in all prior paragraphs.

66. Defendants and each of them have violated Plaintiff's right to be free of sex and race discrimination under Title VII of the Civil Rights Act of 1964 as amended 42 USC Section 2000e et seq. and under Title 41 of the Ohio Revised Code.

## SECOND CAUSE OF ACTION:
## RETALIATORY DISCHARGE/DISCRIMINATION/FAILURE TO HIRE

67. Plaintiff incorporates all previous paragraphs as if fully rewritten herein.

68. Defendant's actions as set forth above constituted retaliation against Plaintiff due to her reporting Title VII violations, discrimination based on gender, and race and for complainant of sexual and racial discrimination and harassment and for filing an EEOC complaint in violation of Title VII.

69. Defendant's actions as set forth above and their failure to hire her, select her for position as case manager, or hire her back in any other capacity for an extended time between 2016 and 2018, constitute discrimination, harassment, based on race and sex, and retaliation for protected activity.

70. As a result of said retaliation, Plaintiff has lost her employment as a correctional officer, and suffered and continues to suffer economic and non-economic damages.

## THIRD CAUSE OF ACTION
## RESPONDEAT SUPERIOR

71. Plaintiff re-alleges as if fully restated herein all allegations contained in all prior paragraphs.

72. At all times relevant hereto, Defendant supervisors and managers, and John Does 1 through and including 10, were agents and/or employee of Defendants.

73. At all times relevant hereto, Defendants' supervisors and managers, and John Does 1 through and including 10, were acting within the course and scope of their employment with Defendants in furtherance of the interests of said Defendant.

74. Defendants are liable to the Plaintiff for her damages under the doctrine of *respondeat superior*.

## FOURTH CAUSE OF ACTION
## VIOLATION OF PUBLIC POLICY

75. Plaintiff re-alleges as if fully restated herein all allegations contained in all prior paragraphs.

76. Pursuant to the Union Contract between Defendants and the _____, of which Plaintiff was a member, a clear public policy existed and was manifested that Plaintiff would not be worked more than 2 double shifts in a row/ per week and that plaintiff could transfer away from her harasser, Union representation at meetings, as well as other actions denied by Defendants.

77. Defendants did fail to select plaintiff for case manager, fail to permit hereto transfer, fail to select her for rehire, and did constructively discharge her under circumstances that jeopardize the public policy

78. Plaintiffs harassment which lead to her dismissal was motivated by conduct related to the public policy.

79. The employer lacked an overriding legitimate business justification for the dismissal.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff alleges that as a direct and proximate result of the Defendants' actions and inactions, that she has suffered and continues to suffer damages as set forth herein, and requests the following relief:

(1) Injunctive relief ordering her reinstatement by Defendants to his former position and prohibiting further disability and age discrimination and retaliation;

(2) Backpay, front pay, and other economic damages

(3) Compensation for Physical Pain and Suffering

(4) Compensation for Emotional Distress

(5) Compensatory damages for medical treatment

(6) Ancillary relief in the form of costs of this action including reasonable attorneys' fees;

(7) Such other relief as the court deems appropriate.

> Respectfully Submitted,
> **THE SAMMARCO LAW FIRM, LLC**
>
> */S/ Alissa J. Sammarco*
> Alissa J. Sammarco - 0077563
> Attorney for Plaintiff
> 15 East 8th Street
> Cincinnati, Ohio 45202
> Telephone: 513-763-7700
> Facsimile: 513-763-7704
> Email: AJS@SammarcoLegal.com

**JURY DEMAND:**

Now comes Plaintiff and demands trial by jury.

> */S/ Alissa J. Sammarco*
> Alissa J. Sammarco – 0077563
> Attorney for Plaintiff